IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| SYDNEY LALOR,<br><br>  Plaintiff,<br><br>v.<br><br>HAWKEYE HOTELS, INC. d/b/a HOTEL FORT DES MOINES, HILTON FRANCHISE HOLDING L.L.C. d/b/a HILTON WORLDWIDE AND CURIO COLLECTION BY HILTON, FIRST HOSPITALITY L.L.C. FIRST HOSPITALITY GROUP, INC., BRAD JOHNSON, KYLE MIRIANI, DILLON DOUGLAS, and NEIL UPADHYAY,<br><br>  Defendants. | CASE NO. 4:24-CV-0072<br><br><br><br><br><br><br><br>**DEFENDANT HILTON FRANCHISE HOLDING LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** |

  Defendant Hilton Franchise Holding LLC ("Hilton Franchise") brings this Motion to Dismiss because Plaintiff's First Amended Petition and Jury Demand (the "Complaint") fails to proffer a single fact that would even arguably support this Court's exercise of jurisdiction over Hilton Franchise. In fact, aside from mentioning Hilton Franchise's state of incorporation and the location of its headquarters, the Complaint does not contain *a single allegation* Hilton Franchise did *anything* to Plaintiff–let alone that it engaged in conduct that is in any way related to the allegations on which this suit is based. Plaintiff's Complaint alleges she was previously employed at the Hotel Fort Des Moines (the "Hotel"). Over more than 30 paragraphs, her Complaint then sets forth a list of discriminatory conduct she was allegedly subjected to by other employees of the Hotel), including individual Defendants Brad Johnson, Kyle Miriani, Dillon Douglas, and Neil Upadhyay (collectively, the "Individual Defendants"). But not one of the Individual Defendants is, or ever was, employed by Hilton Franchise. Plaintiff's apparent misconception notwithstanding, all the individuals who allegedly mistreated and discriminated against her were,

at all relevant times, employed by an independent staffing company—*not Hilton Franchise*.[1] Hilton Franchise had no role in retaining that staffing company, an entity with which Hilton Franchise has no corporate relationship. Three layers removed from Plaintiff's actual employer, Hilton Franchise's on "connection" to this matter is that it granted the owner of the Hotel a license to operate the Hotel as part of the Curio Collection by Hilton. That is not nearly enough for this Court to exercise personal jurisdiction over Hilton Franchise.

As the Complaint admits, Hilton Franchise is a Delaware corporation that is headquartered in Virginia. That means that Iowa is not Hilton Franchise's "home" for general jurisdiction purposes. Specific jurisdiction is likewise lacking because, as discussed above and more fully below, Plaintiff's Complaint does not contain a single allegation that Hilton Franchise engaged in *any* act in this state, let alone one connected to the Complaint's allegations of wrongdoing. Plaintiff's bare proclamation the "Corporate Defendants" collectively are liable for any damages caused by the Individual Defendants "[u]nder the doctrine of *respondeat superior*" or "the principle of ostensible agency" (Compl. ¶ 18) does nothing to remedy this deficiency. For these and the additional reasons set forth below, the Complaint should be dismissed as to Hilton Franchise, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(2).

**RELEVANT BACKGROUND FACTS**

Plaintiff Sydney Lalor claims she was previously employed at the Hotel Fort Des Moines. Compl. ¶ 20. Hotel Fort Des Moines is part of the Curio Collection by Hilton. (*See* Ex. A, Declaration of James Smith ["Smith Decl."] ¶ 7.) Unlike other familiar brands owned by Hilton (such as Hilton, Hilton Garden Inn, Embassy Suites, or DoubleTree), the Curio Collection is a

---

[1] Upon information and belief, the company employing Plaintiff and the Individual Defendants was an unnamed entity—Hospitality Staffing, Inc.

group of bespoke hotels, each with its own distinctive architecture and design. (Ex. A, Smith Decl. ¶ 7.) The Curio Collection offers guests the ability to experience independent hotels, while providing the benefits of Hilton and its award-winning guest loyalty program. (Ex. A, Smith Decl. ¶ 7.)

Hilton Franchise, however, does not own or operate the Hotel. The Hotel is owned by an entity named as Janssen Lodging, Inc. ("Janssen Lodging"). (Ex. A, Smith Decl. ¶¶ 9-10.)[2] Hilton Franchise has no corporate relationship or affiliation with Janssen Lodging, nor does it have any ownership interest in that entity. (Ex. A, Smith Decl. ¶ 10.)

Hilton Franchise also does not employ any of the staff at the Hotel. In fact, it appears that even Janssen Lodging does not operate the Hotel, as the Complaint alleges that the owner of the Hotel retained a management company, Defendant First Hospitality, LLC and/or Defendant First Hospitality Group, Inc. to operate the Hotel. Compl. ¶¶ 12, 13, 19. Hilton Franchise has no corporate relationship with or ownership interest in First Hospitality, LLC or First Hospitality Group, Inc., and it never employed any of the Individual Defendants. (Ex. A, Smith Decl. ¶¶ 11-14.) Indeed, Hilton Franchise has never employed *any* individual who worked at the Hotel, and it has no role in hiring, paying, scheduling, promoting, disciplining or terminating the employees at the Hotel. (Ex. A, Smith Decl. ¶¶ 11-14.)

On or about January 5, 2024, Plaintiff filed the Complaint in the Iowa District Court for Polk County, which she amended on or about January 24, 2024, claiming her supervisor subjected her to unwanted sexual comments and physical contact, that Hotel management did not appropriately respond to her complaints, and that this conduct violated Section 704(a) of Title VII of the Civil Rights Act of 1964 and Iowa law and constituted common law assault and battery.

---

[2] The Complaint misidentifies the franchisee of the Hotel as Hawkeye-Hotels, Inc.

Compl. ¶¶ 19-43; Counts I-III.[3] The lawsuit was removed to this Court on February 21, 2024, by other Defendants.

## ARGUMENT

I. **THIS COURT LACKS PERSONAL JURISDICTION OVER HILTON FRANCHISE.**

Even if Plaintiff had any viable basis for seeking to hold Hilton Franchise liable for the wrongs allegedly committed by the employees of an independent staffing company that was retained by an independent management company that was retained by an independent franchisee – and she does not—her attempt to do so fails in the first instance because this Court lacks personal jurisdiction over Hilton Franchise. "For a district court to properly assert jurisdiction over a nonresident defendant the court 'must determine [if] personal jurisdiction exists under the forum state's long-arm statute and [if] the exercise of personal jurisdiction is consistent with due process.'" *Iowa Pork Producers Ass'n v. Bonta*, No. 21-CV-3018-CJW-MAR, 2021 WL 4465968,

---

[3] Plaintiff alleges she filed a charge with the Iowa Civil Rights Commission ("ICRC") on December 19, 2022, and received a Right to Sue letter from the ICRC on October 18, 2023, and one from the U.S. Equal Opportunity Commission on January 8, 2024. Hilton Franchise did not receive a copy of either document. (Ex. A, Smith Decl. ¶ 17.) That is likely because the charge Plaintiff filed with the ICRC names "Hilton Worldwide and Curio Collection by Hilton"—which is a non-existent entity—as a Respondent. (Ex. A, Smith Decl. ¶ 18.) Plaintiff did not list Hilton Franchise. (Ex. A, Smith Decl. ¶ 18.) Failure to exhaust administrative remedies is dispositive. *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 760 (8th Cir. 2004); *Rensink v. Wells Dairy, Inc.*, 741 F. Supp. 2d 1038, 1049 (N.D. Iowa 2010); *McElroy v. State,* 703 N.W.2d 385, 391 (Iowa 2005). Plaintiff's failure to list Hilton Franchise is fatal to her claim. Iowa Code § 216.15(1) ("Any person claiming to be aggrieved by a discriminatory or unfair practice may, in person or by an attorney, make, sign, and file with the commission a verified, written complaint which ***shall*** **state the name and address of the person, employer, employment agency, or labor organization alleged to have committed the discriminatory or unfair practice of which complained**…." (emphasis added)); *Schultzen v. Woodbury Cent. Cmty. Sch. Dist.*, 250 F. Supp. 2d 1047, 1053-54 (N.D. Iowa 2003) ("Schultzen concedes … she did not name Bumsted as a party in her Iowa Civil Rights Complaint and therefore, no direct cause of action can lie against Bumsted under IOWA CODE ch. 216."). Hilton Franchise reserves the right to raise this failure in the event this Court concludes it has personal jurisdiction over Hilton Franchise.

4

at *4 (N.D. Iowa Aug. 23, 2021) (quoting *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010)). Because Iowa's long-arm statute permits personal jurisdiction to be exercised to the full extent allowed by the United States Constitution, these inquiries collapse into one. *See Iowa Pork*, 2021 WL 4465968, at *4; *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005) ("Iowa Rule of Civil Procedure 1.306 ... expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution).

There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction; and (2) specific jurisdiction. *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.,* No. 21-CV-1004-KEM, 2022 WL 945608, at *3 (N.D. Iowa Mar. 29, 2022) (quoting *Fastpath*, *Inc. v. Arbela Techs. Corp.,* 760 F.3d 816, 820 (8th Cir. 2014)). Under both inquiries, the party asserting jurisdiction has the burden of proving it exists. "To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc.*, 607 F.3d at 518 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Id*. Its "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id*. (internal quotation marks omitted).

Here, Plaintiff has not established—and cannot establish—that the exercise of either general or specific jurisdiction over Hilton Franchise would comport with Due Process.

A.  Hilton Franchise Is Not "At Home" in Iowa.

Plaintiff alleges no facts showing Hilton Franchise is subject to general jurisdiction in Iowa. None exist. General jurisdiction allows a plaintiff to sue a defendant "on any and all claims," regardless of the connection between those claims and the forum. *Daimler v. AG Bauman*,

5

571 U.S. 117, 121 (2014). To be subject to general jurisdiction, a defendant's contacts with the forum must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler*, 571 U.S. at 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

A corporation is at home in the states where it is incorporated and where it has its principal place of business. *Daimler*, 571 U.S. at 138. The fact that a corporation does business in other states is not enough to subject a nonresident corporation to general jurisdiction those states. Rather, the Supreme Court has made clear a company like Hilton Franchise, which does business in multiple states, is only at home in states other than its "formal place of incorporation or principal place of business" in the "exceptional case" where its operations in those other states "may be so substantial and of such a nature as to render the corporation at home in that state." *Id.* at 139 n.19. In other words, a foreign corporation cannot be subject to general jurisdiction in a forum outside its home state(s) unless its activities in the forum closely approximate the level of activities that would lead a state to be deemed the corporation's principal place of business. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citing *Perkins v Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), where a corporation had to temporarily relocate its entire enterprise due to war, as an example of when a corporation was "at home" in a state other than where it is incorporated or maintained its principal place of business).[4]

---

[4] In accord with *Daimler*, courts in this Circuit have repeatedly held they lack general jurisdiction over corporations that do business nationwide but are neither incorporated nor headquartered in the state where the lawsuit was filed. *See Regenexx, LLC v. Regenex Health LLC*, 446 F. Supp. 3d 469, 477-78 (S.D. Iowa 2020) (no general jurisdiction over defendants based on "continuous and systematic" internet contacts because there was "no indication they are more 'at home' in Iowa than they are anywhere else their websites can be accessed"); *Spanier v. Am. Pop Corn Co.,* No. C15-4071-MWB, 2016 WL 1465400, at *7 (N.D. Iowa Apr. 14, 2016) (finding non-resident corporation was not subject to general jurisdiction in Iowa where there was no evidence the corporation's contracts with Iowa were "more significant than the contracts they would have with

Hilton Franchise is a Delaware entity headquartered in Virginia. (Ex. A, Smith Decl. ¶ 4); Compl. ¶ 10. It does not own, operate, or manage any Curio Collection hotels (or any other hotels) in Iowa, nor does it have any offices in the State. (Ex. A, Smith Decl. ¶¶ 4, 15.) Further, while Hilton Franchise has entered into franchise agreements for franchised hotels in Iowa, those contracts are no more substantial in number than the contracts Hilton Franchise enters into for franchises in other states—of the over 5600 open hotels in the Hilton family of brands in the United States, only 58 are located in Iowa. (Ex. A, Smith Decl. ¶ 16.) That, no doubt, is why courts have consistently rejected the assertion that franchisors, like Hilton Franchise, are subject to general jurisdiction in states other than their states of incorporation and principal place of business. *See, e.g.*, *Perryman v. Hotel Wetumpka AL, LLC*, No. 2:22-CV-00123-MHH, 2023 WL 9621893 (N.D. Ala. Mar. 29, 2023); *Willock v. Hilton Domestic Operating Co.*, 474 F. Supp. 3d 938 (M.D. Tenn. 2020); *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 128, 132-34 (4th Cir. 2020) (holding that franchisor Marriott International, which is incorporated in Delaware and has its principal place of business in Maryland, lacked sufficient contacts with South Carolina to be subject to general jurisdiction in that state; "[b]ecause there is nothing that would distinguish Marriott's relationship with South Carolina from its relationship with any of the other states where it does business but where it is not incorporated or headquartered, this is not the exceptional case for general jurisdiction contemplated by the *Daimler* Court. Indeed, accepting the Plaintiffs' jurisdictional arguments in this case would mean that Marriott would be subject to general jurisdiction in every state where its hotels are located."); *accord Bobick v. Wyndham Worldwide*

---

any other state in which they sell their products"); *Lexion Med., LLC v. SurgiQuest, Inc.*, 8 F. Supp. 3d 1122 (D. Minn. 2014) (repeated business within the state, employee residents, and employee travel into the state were not sufficient to render the non-resident corporate defendant "at home" within the state).

*Operating, Inc.*, No. 3:18-CV-00514, 2018 WL 4566804, at *1 (M.D. Tenn. Sept. 24, 2018) (even though hotel franchisor Wyndham Worldwide Operating, Inc. and its affiliates "do have contacts in Tennessee via the resorts they own, the Tennesseans they employ, the offices they maintain, and the marketing efforts undertaken in the state," it was not "at home" in Tennessee because there was no evidence that its "business [in Tennessee] is comparatively more significant than its business around the country").

Because Plaintiff does not (and cannot) allege facts suggesting Hilton Franchise's operations in Iowa are "so substantial and of such a nature as to render" it "at home" here, general jurisdiction does not exist. *Daimler*, 571 U.S. at 139.

> B. *This Court Does Not Have Specific Jurisdiction over Hilton Franchise Because It Has Not Purposefully Availed Itself of the Laws of Iowa, and Plaintiff's Claims Do Not Arise from Hilton Franchise's Contacts with Iowa.*

"Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state ... ." *Fastpath*, 760 F.3d at 820 (quoting *Miller v. Nippon Carbon Co.*, Ltd., 528 F.3d 1087, 1091 (8th Cir. 2008)). Accordingly, to determine whether a forum has specific jurisdiction over a nonresident defendant, the Court must focus on "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283-84 (internal quotation omitted). Further, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Contacts between the plaintiff and the forum State do not satisfy this inquiry." *Fastpath*, 760 F.3d at 821.

The Eighth Circuit applies a five-factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction: "1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5)

8

convenience of the parties." *Fastpath*, 760 F.3d at 821. The most weight is given to the first three. *Id*.

Here, these factors do not support the exercise of personal jurisdiction over Hilton Franchise. Plaintiff does not plead one alleged act that Hilton Franchise took in Iowa (or anywhere else, for that matter) at all—let alone one that has any relation to her causes of action. Indeed, the only time Plaintiff even attempts to explain Hilton Franchise's presence in this suit is when she summarily proclaims that all of the "Corporate Defendants" are liable for the actions taken by the Individual Defendants on a *respondeat superior* or ostensible agency theory. But neither theory has any application here.

First, "[a] claim of vicarious liability under the doctrine of *respondeat superior* rests on two elements: proof of an employer/employee relationship, and proof that the injury occurred within the scope of that employment." *Biddle v. Sartori Mem'l Hosp.*, 518 N.W.2d 795, 797 (Iowa 1994); *see also Vlotho v. Hardin Cnty.*, 509 N.W.2d 350, 354 (Iowa 1993). There is no allegation that any employer/employee relationship existed between Hilton Franchise and any of the Individual Defendants and, as a matter of fact, there was no such relationship. (Ex. A, Smith Decl. ¶¶ 10-14.)

Second, save for simply saying the phrase "ostensible agency," Plaintiff has done nothing to establish the existence of an agency relationship between Hilton Franchise and the Individual Defendants. "[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Restatement (Second) of Agency § 27; *accord C & J Vantage Leasing Co.*, 784 N.W.2d 753, 759 (Iowa 2010) ("'For apparent authority to exist, the principal must have acted in

such a manner as to lead persons dealing with the agent to believe the agent has authority.'") (quoting *Vischering v. Kading*, 368 N.W.2d 702, 711 (Iowa 1985)); *see also Frontier Leasing Corp. v. Links Eng'g, L.L.C.*, 781 N.W.2d 772, 776 (Iowa 2010) ("Apparent authority is authority the principal has knowingly permitted or held the agent out as possessing."). "Moreover, the person asserting that the agent had apparent authority to act for the principal must have reasonably believed that the agent was acting with the authority of the principal." *McGraw v. Wachovia Secs., L.L.C.*, 756 F. Supp. 2d 1053, 1081 (N.D. Iowa 2010) (citing *State v. Sellers*, 258 N.W.2d 292, 297 (Iowa 1977)). Plaintiff satisfies neither requirement. She pleads nothing that Hilton did or said that would have led her to believe the Individual Defendants were Hilton Franchise's agents—indeed, she does not plead that Hilton Franchise said or did anything at all—and one would need to suspend reason to conclude that she reasonably believed the Individual Defendants were somehow Hilton Franchise's agents, as Plaintiff worked for the same independent staffing company as the Individual Defendants![5]

---

[5] Even if it was the franchisee (or the franchisee's employees) who allegedly discriminated against her—as opposed to her co-workers—that would still not be enough to support a claim of apparent agency. In *Willock v. Hilton Domestic Operating Co.*, 474 F. Supp. 3d at 948-951, for example, the court found lacked specific jurisdiction over the Hilton franchisor for discriminatory acts that allegedly occurred at a franchised Hampton Inn and Suites located in Nashville. Rejecting the notion that the franchisee was Hilton's apparent agent, the court explained that finding an agency relationship based solely on the franchise relationship:

> would effectively transform every franchisor-franchisee relationship into an agency relationship. That, though, is not how franchising works. A franchise agreement is merely a type of trademark licensing arrangement that allows the franchisee to do business under the franchisor's brand, as long as the franchisor retains some limited amount of quality control. While "the existence of a franchisor-franchisee relationship between persons does not in itself preclude the existence of a principal-agent relationship between them," neither does it mandate any such connection. The mere existence of a franchise relationship is insufficient to establish actual or apparent agency; the test for either must be met with additional facts.... **[Plaintiff] cannot bind the court to an erroneous interpretation of agency law simply by including that interpretation in his Complaint**.

*Id.* (quoting *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011)) (emphasis added); *accord Marchionda v. Embassy Suites Franchise, LLC*, 359 F. Supp. 3d 681, 697-98 (S.D.

Because Plaintiff has alleged no words or conduct by Hilton Franchise that would support her agency allegation, that allegation cannot support a finding of specific jurisdiction. *See Romak USA, Inc. v. Rich*, 384 F.3d 979, 985 (8th Cir. 2004) ("Although a court may exercise personal jurisdiction over a defendant through the acts of his agent, [a] party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority.") (internal quotation marks omitted); *Novus Franchising, Inc. v. Dawson*, No. CIV. 12-0529 JRT/JJG, 2012 WL 3031235, at *1 (D. Minn. July 25, 2012) (no personal jurisdiction where plaintiff failed to establish any agency relationship and otherwise failed to establish any minimum contacts); *Christenson Transp., Inc. v. Samsung Int'l Inc.*, No. 04-3538-CV-S-RED, 2005 WL 3190456, at *2 (W.D. Mo. Nov. 28, 2005) (no personal jurisdiction over purported principal where plaintiffs failed to establish prima facie case of an agency relationship); *accord Viches v. MLT*, 127 F. Supp. 2d 828, 832 (E.D. Mich. 2000) (hotel franchisee was not an agent of the franchisor for purposes of specific jurisdiction even though the franchisor supplied a menu to be followed, dictated policies regarding job duties, mandated how to take reservations, required a standard for room cleaning, and retained the right to inspect the hotel periodically).

## **CONCLUSION**

For the reasons set forth above, Hilton Franchise respectfully requests the Court dismiss Plaintiff's claims against it with prejudice for lack of personal jurisdiction.

---

Iowa 2018) (concluding that, under Iowa law, relationship between hotel franchisor and hotel franchisee did not give rise to ostensible agency relationship, where neither the hotel nor the franchisee held itself out to be agent of franchisor).

11

Dated: March 12, 2024                    Respectfully submitted,

BELIN McCORMICK, P.C.

*/s/ Kelsey J. Knowles*
Kelsey J. Knowles
666 Walnut Street, Suite 2000
Des Moines, IA  50309-3989
Telephone: (515) 283-4631
Facsimile:  (515) 558-0631
Email:         kjknowles@belinmccormick.com

Bethany L. Appleby*
DLA Piper LLP (US)
33 Arch Street, Suite 2600
Boston, MA 02110
Telephone:  (617) 406-6048
Facsimile:    (617) 406-6148
Email:          Bethany.appleby@us.dlapiper.com
*pro hac vice application filed contemporaneously herewith*

ATTORNEYS FOR HILTON FRANCHISE HOLDING LLC